# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ERIN OLSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>SHAWNEE COUNTY BOARD OF )<br>COMMISSIONERS, )<br>)<br>Defendant. )<br>) | Case No. 12-2084-JTM-KGG |

## MEMORANDUM & ORDER ON
## PLAINTIFF'S MOTION TO COMPEL

Now before the Court is Plaintiff's Motion to Compel (Doc. 104) seeking an Order directing Defendant to produce certain investigative materials as well as an Order instructing Defendant to respond to discovery requests submitted beyond the Scheduling Order deadline for serving discovery. Having reviewed the submissions of the parties, Plaintiff's motion is **GRANTED in part** and **DENIED in part** as more fully set forth below.

## BACKGROUND

Plaintiff brings this action alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Equal Pay Act of 1963. Plaintiff began her employment with the Shawnee County Sheriff's Office in 2008

1

in a clerical position. (Doc. 1, at 2-3.) She alleges that she was given various promotions and additional responsibilities throughout her employment. (*Id.*, at 3-5.) She also alleges, however, that she was not paid the same as a similarly situated male employee, despite her complaints. (*Id.*) To the contrary, Plaintiff contends she was retaliated against as a result of requesting a raise in the form of intimidating, insulting behavior as well as a demotion and, ultimately the pretextual termination of her employment. (*Id.*, at 7-10, 20-21.) She contends that she was removed from her position because other employees of the Sheriff's department did not want a woman in that position. (*Id.*, at 10-11.) She further alleges that she was harassed, threatened, and stalked. (*Id.*, at 13-20.)

Plaintiff brings the current motion to compel encompassing two issues. First, she argues that Defendant's objections and refusal to produce Professional Standards Investigation documents (hereafter "PSU documents"[1]), including on the basis of the attorney/client privilege, are improper. Second, she argues that Defendant should be compelled to respond to additional discovery requests she admittedly served outside the deadline for discovery to be served contained in the Scheduling Order. The Court will address each issue in turn.

---

[1] Plaintiff characterizes PSU investigations as "Internal Affairs investigations that the sheriff orders when an employee is charged with serious misconduct such as criminal activity, civil rights violations and substance abuse." (Doc. 105, at 4.) For purposes of this motion, the Court will accept that definition as correct.

2

## ANALYSIS

**A.     Professional Standards Investigations Reports**.

The Request for Production at issue seeks documents "regarding any and all PSU and/or internal investigations involving" a list of individuals who Plaintiff contends are either her supervisors/alleged harassers or other employees of the Sheriff's Office. (Doc. 105-2, at 7; Doc. 105, at 3.)  Defendant objects that

> [t]his request is overbroad, vague, not defined or limited in scope regarding timeframe [sic] or specificity and requests documentation that is irrelevant, immaterial and not reasonably calculated to lead to discovery of relevant or admissible evidence.  Additionally, the documentation requested is protected by attorney-client privilege to the extent any of the investigations were directed by legal counsel for the Sheriff's Department.

(Doc. 105-2, at 7.)[2]

Fed.R.Civ.P. 26(b) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  As such, the requested information must be both nonprivileged and relevant to be discoverable.

**1.     Attorney/Client privilege**.

---

[2] Without waiving any or these objections, Defendant indicated that "investigations regarding plaintiff as to John Ostenson have previously been provided."

3

The attorney-client privilege shields from discovery communications between an attorney and client, made in confidence, under "circumstances from which it may reasonably be assumed that the communication will remain in confidence." *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir.2006) (internal citation omitted). In addition,

> [c]ommunications from the client to the attorney as well as those from the attorney to the client are both privileged. *Lintz v. Am. Gen. Fin., Inc*., No. 98–2213–JWL, 1999 WL 450197, at *3 (D.Kan. Jun. 24, 1999) (stating that the attorney-client privilege is triggered by a client's request for legal, as opposed to business, advice and communications from an attorney to a client). It is also well-established that privileges are to be strictly construed and narrowly applied. *See* **Trammel v. United States**, 445 U.S. 40, 50 (1980) (stating that "testimonial exclusionary rules and privileges ... must be strictly construed"); ***Univ. of Pa. v. EEOC***, 493 U.S. 182, 189 (1990) (stating that although privileges are to be decided on a case by case basis, the Court was disinclined to "exercise this authority expansively"); ***United States v. Nixon***, 418 U.S. 683, 710 (1974) (exceptions to the demand for every man's evidence are not to be expansively construed because they are in derogation of the search for the truth).

***Blann v. Rogers***, No. 11-2711-CM-KGG, 2012 WL 4596180, at *2 (D.Kan. Oct. 2, 2012).

Defendant objects that the PSU records at issue are protected by the attorney/client privilege "because they are conducted at the direction of" Defendant's General Counsel. (Doc. 105-1, at 8.) Plaintiff argues that privilege

4

does not apply to the requested records because the General Counsel's role in the underlying investigation was simply to relay information. (Doc. 105, at 12.) Because Defendant has raised the privilege, it is its burden to establish the necessary elements. ***ERA Franchise Sys., Inc. v. N. Ins. Co. of New York***, 183 F.R.D. 276, 278–79 (D.Kan.1998) (internal citations omitted).

According to Defendant, the General Counsel (Michael George) testified that

> the Sheriff will bring him a complaint, and Mr. George will pass the information in the complaint on to the PSU Investigator and direct the Investigator to conduct an investigation. Although Mr. George's testimony does suggest that he directs the investigation in some manner, it is not necessary that he direct every aspect of the investigation. In fact, it is sufficient that the PSU Investigator conducts a 'factual investigation that would inform the legal guidance' that Mr. George would provide to the Sheriff. As such, the attorney-client privilege should apply these PSU investigations.

(Doc. 110, at 8, internal citations omitted.) Unfortunately for Defendant, it has provided little if any evidence that actual "legal guidance" occurs in this process. Rather, after counsel passes along responsibility for the investigation, the investigation occurs and a report is compiled by the investigator. Counsel then shares the contents of that report with the Sheriff.

While the Court anticipates that "legal guidance" occurs during this *conversation*, that does not make the contents of the *underlying report* – which

5

counsel did not draft and for which counsel did not conduct the underlying investigation – privileged. "Saying that unspecified 'subjects of documents' are 'protected' by the attorney client privilege as a result of merely being mentioned during discussions with counsel wholly fails to establish a showing of privilege." *U.S. v. Dillard*, 11-1098-JTM-KGG, 2013 WL 74316, at *2 (D.Kan. Jan. 7, 2013) (further holding that "the actual discussions between the witness and her attorney concerning the documents are privileged").

Contrary to Defendant's arguments, whether the investigation and resulting report occurred at the direction of counsel is not germane to the issue of the attorney/client privilege. It is, however, one of the factors in determining whether a particular document is protected by the work product doctrine. "To establish the applicability of the work product privilege, [the withholding party] must show the following elements: '(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party.'" *U.S. Fire Ins. Co. v. Bunge North America, Inc*., No. 05-2192-JWL-DJW, 2008 WL 2548129, at *5 (D.Kan. June 23, 2008) (quoting *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D.Kan.2000) (citations omitted)). Defendant did not, however, raise this potential objection, however. Further, the documents at issue were created in the

6

regular course of business, not in anticipation of litigation.  As such, Defendant's privilege objection is **overruled**.

    **2.    Relevance and overbreadth**.

Defendant also objects that the information requested is irrelevant and overly broad.  "'Discovery relevance is minimal relevance,' which means it is possible and reasonably calculated that the request will lead to the discovery of admissible evidence." *Teichgraeber v. Memorial Union Corp. of Emporia State University*, 932 F.Supp. 1263, 1265 (D. Kan. 1996) (internal citation omitted). "Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." *Smith v. MCI Telecommunications Corp.*, 137 F.R.D. 25, 27 (D.Kan.1991).  Stated another way, "discovery should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *Snowden By and Through Victor v. Connaught Lab.*, 137 F.R.D. 325, 341 (D.Kan.1991), appeal denied, 1991 WL 60514 (D.Kan. Mar. 29, 1991).  The scope of discovery is broad, but not unlimited. If the proponent has failed to specify how the information is relevant, the Court will not require the respondent to produce the evidence. *Gheesling v. Chater*, 162 F.R.D. 649 (D. Kan. 1995).

Considering the broad definition of relevance in the context of discovery, the Court is hesitant to find that the request at issue fails to seek relevant information whatsoever.  The Court anticipates that a portion of that which as been requested may very well be relevant to Plaintiff's claims.  Given, however, the sheer breadth of the request – which seeks the investigative reports regarding 8 individuals, relating to *any* subject matter and not limited whatsoever temporally – the Court finds Plaintiff's request to be patently overbroad on its face.  As stated above, Plaintiff characterizes PSU investigations as "Internal Affairs investigations that the sheriff orders when an employee is charged with serious misconduct such as criminal activity, civil rights violations and substance abuse." (Doc. 105, at 4.)  By Plaintiff's own description, the potential subject matter of these investigations (and the resulting documentation) encompasses information well beyond any tenuous relevance to the facts at issue in the present case.

Further, Plaintiff has not provided the Court with sufficient information regarding the individuals listed or their positions to determine whether any of them may in fact be similarly situated to Plaintiff in the context of their employment with Defendant.  It is not the Court's responsibility or role to seek out such information beyond what has been provided by the parties in regard to this motion.  Thus, Defendant's objections as to relevance and overbreadth are **sustained**. Plaintiff's motion is **DENIED** in regard to Request for Production No. 29.

**B.     Untimely Served Discovery**.

The remaining issue relates to discovery requests Plaintiff admittedly served two days beyond the date for discovery to be served in time to be completed by the deadline contained in the Court's Scheduling Order. (*See* Doc. 34, at 2; *see also* Docs. 105-3, 105-4.) Defendant refused to respond to the discovery because it "fails to comply with the Court's Final Scheduling Order . . . ." (*See generally* Docs. 105-3, 105-4.) Plaintiff argues that Defendant should be ordered to respond "because the mistake was inadvertent, the delay was minimal, the defendant will not be prejudiced, and Plaintiff has made several [scheduling/timing] allowances for Defendant in the past." (Doc. 105, at 17-18.)

The "good cause" standard is employed when deciding motions to amend a Scheduling Order.  *See* **Denmon v. Runyon**, 151 F.R.D. 404, 407 (D.Kan.1993) (stating that a motion to amend filed after the deadline established in the scheduling order must meet the standard of "good cause" under Fed.R.Civ.P. 16(b)).  Plaintiff argues that she "misinterpreted the meaning of FRCP 6(d) when she calculated the date on which her requests were due under the Scheduling Order," causing her to email the final discovery requests to Defendant two days late. (Doc. 105, at 18.)  The Court finds Plaintiff's delay to be both negligible and excusable. *Accord* **Lykins v. CertanTeed Corp**., No. 11-2133-JTM, 2012 WL 3578911 (D. Kan. August 17, 2012).  Plaintiff's motion is, therefore, **GRANTED**

in regard to Plaintiff's Eighth Request for Production of Documents (Doc. 105-3) and Plaintiff's Ninth Request for Production of Documents (Doc. 105-4). Defendant shall serve responses to these discovery requests on Plaintiff's counsel within **30 (thirty) days** of the date of this Order.

Plaintiff's motion is, therefore, **GRANTED in part** and **DENIED in part** as more fully set forth above. Defendant shall respond in compliance with this Order within **thirty (30) days** of the date of this Order.

**IT IS SO ORDERED.**

Dated this 20th day of March, 2013, at Wichita, Kansas.

                                        S/ KENNETH G. GALE
                                        HON. KENNETH G. GALE
                                        U.S. MAGISTRATE JUDGE